UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ROBERT L. B., JR.,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Case No. C19-150-MLP

ORDER

## I.     INTRODUCTION

Plaintiff seeks review of the denial of his application for Supplemental Security Income and Disability Insurance Benefits. Plaintiff contends the administrative law judge ("ALJ") erred in evaluating the medical opinion evidence, evaluating Plaintiff's testimony, and in making step five findings. (Dkt. # 11.) As discussed below, the Court REVERSES the Commissioner's final decision and REMANDS the matter for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

ORDER - 1

## II. BACKGROUND

Plaintiff was born in 1977, has a twelfth-grade education, has attended community college, and has worked as a dish washer and as a general laborer. AR at 36, 189, 199, 215. Plaintiff was last gainfully employed in 2005. *Id.* at 198.

On July 14, 2015, Plaintiff applied for benefits, alleging disability as of January 1, 2012. AR at 162-170, 215. Plaintiff's application was denied initially and on reconsideration, and Plaintiff requested a hearing. *Id.* at 58, 67. 90. After the ALJ conducted a hearing on October 4, 2017, the ALJ issued a decision finding Plaintiff not disabled. *Id.* at 15-24, 31-57.

Utilizing the five-step disability evaluation process,[1] the ALJ found:

Step one: Plaintiff has not engaged in substantial gainful activity since May 29, 2015, the application date.

Step two: Plaintiff has the following severe impairments: depressive disorder; anxiety disorder; posttraumatic stress disorder ("PTSD"); and polysubstance abuse, in remission (20 CFR 416.920(c)).

Step three: These impairments do not meet or equal the requirements of a listed impairment.[2]

Residual Functional Capacity: Plaintiff can perform a full range of work at all exertional levels but with the following nonexertional limitations: he is limited to performing simple, routine, repetitive tasks with occasional superficial contact with the general public. Additionally, the claimant can never climb ladders, ropes, or scaffolds and he must avoid concentrated exposure to workplace hazards, such as unprotected heights.

Step four: Plaintiff has no past relevant work.

Step five: As there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, Plaintiff is not disabled.

AR at 15-24.

---

[1] 20 C.F.R. § 416.920.
[2] 20 C.F.R. Part 404, Subpart P. Appendix 1.

As the Appeals Council denied Plaintiff's request for review, the ALJ's decision is the Commissioner's final decision. AR at 1-4. Plaintiff appealed the final decision of the Commissioner to this Court. (Dkt. # 11.)

### III. LEGAL STANDARDS

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). As a general principle, an ALJ's error may be deemed harmless where it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (cited sources omitted). The Court looks to "the record as a whole to determine whether the error alters the outcome of the case." *Id*.

"Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

# IV. DISCUSSION

## A. The ALJ Erred in Evaluating the Medical Opinion Evidence

The opinions of examining physicians are to be given more weight than non-examining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The uncontradicted opinions of examining physicians may not be rejected without clear and convincing evidence. *Id.* An ALJ may reject the controverted opinions of an examining physician only by providing specific and legitimate reasons that are supported by the record. *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

Opinions from non-examining medical sources are to be given less weight than treating or examining doctors. *Lester*, 81 F.3d at 831. However, an ALJ must always evaluate the opinions from such sources and may not simply ignore them. In other words, an ALJ must evaluate the opinion of a non-examining source and explain the weight given to it. Social Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *2. Although an ALJ generally gives more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a non-examining doctor's opinion may nonetheless constitute substantial evidence if it is consistent with other independent evidence in the record. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Orn*, 495 F.3d at 632-33.

### 1. David Widlan, Ph.D.

Dr. Widlan, an examining clinical psychologist, performed a DSHS psychological evaluation of Plaintiff in 2015. AR at 319-28. Dr. Widlan opined that Plaintiff had moderate limitations with following detailed instructions, performing activities with a schedule and maintaining regular attendance, learning new tasks, and performing routine tasks without special supervision. *Id.* at 321. Dr. Widlan also opined Plaintiff had moderate limitations regarding

asking simple questions, maintaining appropriate behavior, and setting realistic goals. *Id.* Dr. Wilidan further opined Plaintiff had marked limitations in adapting to changes in a routine work setting, communicating and performing effectively in a work setting, and completing a normal work day and work week without interruptions from his psychological symptoms. *Id.*

The ALJ assigned Dr. Widlan's opinion little weight, finding that it was inconsistent with the objective evidence of Plaintiff's intact memory and cooperative and interactive behavior with treatment providers and examiners. AR at 22. Dr. Widlan also indicated that he considered Plaintiff's limitations to persist for six to twelve months, which the ALJ found of little use for evaluating Plaintiff's permanent disability. *Id.*

The reasons the ALJ provided for discounting Dr. Widlan's opinion are not specific and legitimate, or supported by substantial evidence. Dr. Widlan did not opine that Plaintiff had memory impairments, rather he found Plaintiff's memory to be within normal limits. AR at 322. Dr. Widlan's opinion therefore was not inconsistent with evidence of Plaintiff's intact memory, as the ALJ suggests. AR at 22. Further, Plaintiff's ability to interact cooperatively and interactively with treatment providers and examiners, without more, is not inconsistent with Dr. Widlan's opinion. Dr. Widlan's assessed limitations with regard to Plaintiff's ability to adapt to changes in a routine work setting, communicate and perform in a work setting, and complete a normal work schedule. These workplace limitations are distinct from Plaintiff's ability to interact one-on-one with treatment providers in a medical or examination environment.

Lastly, Dr. Widlan's opinion that Plaintiff's impairments would last six to twelve months does not necessarily indicate that he would not satisfy the twelve-month durational requirement. If Plaintiff's impairments lasted twelve months, as Dr. Widlan opined they might, he would satisfy the durational requirement for Social Security claims. *See* 42 U.S.C. § 423 (d)(1)(A)

(disability means "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment…which has lasted or can be expected to last for a continuous period of not less than 12 months"). Further, as discussed below, Dr. Burdge assessed the same impairments as Dr. Widlan, and found these limitations would last twelve months. Accordingly, the ALJ did not provide specific and legitimate reasons, supported by substantial evidence, for discounting Dr. Widlan's opinion.

        2.       Aaron Burdge, Ph.D.

Dr. Burdge reviewed Plaintiff's medical evidence in 2015. AR at 329-32. Specifically, Dr. Burdge reviewed the 2015 medical opinion of Dr. Widlan and the 2012 medical opinion of Dr. Quinci. *Id.* at 329. Dr. Burdge opined Plaintiff had PTSD and depression, and had functional limitations including marked limitations in adapting to changes in a routine work setting, communicating and performing effectively in a work setting, and in completing a normal workday and workweek without interruptions from his psychologically based symptoms. *Id.* at 329, 331. Dr. Burdge's opinion mirrored Dr. Wildan's, except that Dr. Burdge opined that the duration of these impairments would equal twelve months. His opinion differed from Dr. Quinci's opinion in that Dr. Quinci opined Plaintiffs functional limitations were more moderate. *Id.* at 335. The ALJ did not assign any weight to Dr. Burdge's opinion.

Plaintiff argues the ALJ erred in failing to address Dr. Burdge's medical opinion at all. (Dkt. # 11 at 8.) Defendant appears to concede this failure constitutes an error, but contends the error was harmless because in rendering his opinion, Dr. Burdge did not review any other evidence from the relevant period, other than Dr. Widlan's opinion. (Dkt. # 16 at 8.) Defendant therefore asserts that the Court should infer that the ALJ rejected Dr. Burdge's opinion for the same reasons the ALJ rejected Dr. Widlan's opinion. (*Id.*)

An ALJ's failure to address medical source opinions in her determination is not harmless error. *Hill v. Astrue*, 698 F.3d 1153, 1160 (9th Cir. 2012) (*citing* 20 C.F.R. § 404.1527(c) ("Regardless of its source, we will evaluate every medical opinion we receive"). Here, the ALJ failed to provide Dr. Burdge's opinion any consideration, and gave no reasons for doing so. This was harmful error. The Court also declines Defendant's invitation to infer that the ALJ rejected Dr. Burdge's opinion for the same reasons she rejected Dr. Widlan's opinion. As discussed above, the ALJ failed to provide specific and legitimate reasons, supported by substantial evidence, for discounting Dr. Widlan's opinion, and therefore Defendant's argument is unpersuasive.

Had the ALJ properly considered the opinions of Drs. Widlan and Burdge, the RFC and hypothetical question may have included additional mental limitations. As the ultimate disability determination may have changed, the ALJ's error is not harmless. *See Molina*, 674 F.3d at 1115. Accordingly, this matter should be remanded for the ALJ to re-evaluate the medical opinion evidence of Drs. Widlan and Burdge.

**B.      Evaluation of Plaintiff's Testimony**

Plaintiff argues the ALJ erred in concluding that Plaintiff's subjective symptom testimony regarding the intensity, persistence, and limiting effects of his symptoms was not entirely consistent with the evidence. (Dkt. # 11 at 9-13.) Plaintiff testified that he is unable to work because of his depression and anxiety around other people, and that he experiences symptoms of fluctuating stress and emotions around groups of people. AR 39, 40. Plaintiff also testified that he isolates himself by remaining in bed while trying to stay focused. *Id.* at 41-43. Plaintiff testified that he gets overwhelmed and angry, and experiences anxiety attacks such as sweating and bad nightmares. *Id.* Lastly, Plaintiff also reported on his application that his symptoms limit him from going out in public. *Id.* at 207.

The ALJ discounted Plaintiff's subjective symptom testimony because his symptoms were improved and effectively managed with medication, he had intact memory and was cooperative and interactive during treatments and examinations, and his activities of daily living were not consistent with his symptom allegations. AR at 20-22. The Court will address each reason in turn.

*1. Improvement with medication*

In evaluating how symptoms affect a claimant's ability to work, the Social Security Administration considers the "effectiveness…of any medications" the claimant takes to alleviate symptoms. 20 C.F.R. § 404.1529(c)(3)-(4). "Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility" for Social Security benefits. *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006).

Here, the ALJ acknowledged that while Plaintiff continued to experience some symptoms of depression and anxiety, medical records showed that medication had proven effective, without side effects or problems, after he became sober in 2012. AR at 21 (citing *id.* at 351, 410, 426, 434, 440, 447.) Plaintiff consistently reported that he was satisfied with his medication and also reported good sleep and appetite. *Id.* at 410, 426, 434, 440. He also reported his medication made him feel "more relaxed" and that he saw positive effects. *Id.* at 351, 447.

Plaintiff concedes that he endorsed improvement from his medications, and that they helped manage his psychotic symptoms, but argues the record shows his conditions remained severe impairments. (Dkt. # 11 at 9.) In support of this assertion, Plaintiff cites to his continued symptoms of depression and anxiety and asserts that while on the medication, he developed obsessive compulsive disorder ("OCD") symptoms which prevented him from focusing or completing tasks appropriately. (*Id.* (citing AR 382, 440, 456, 458, 461).) As noted above, the

ALJ acknowledged that Plaintiff continued to experience symptoms, however, the ALJ could reasonably find that the medical records show Plaintiff's impairments were not as severe as alleged when he was compliant with medication. Even the records cited by Plaintiff in support of his argument demonstrate his improvement with treatment. *See* AR at 456 (good response to medication and engaged in treatment), 461 (good response to medication). Although Plaintiff did display some symptoms of OCD, it does not appear these symptoms rose to a level warranting any change or discontinuation in his medication. *See* AR at 461 ("[Plaintiff] displays symptoms of OCD and will continue to monitor. There are no changes made at this time and will continue to monitor."). Although Plaintiff proposes a different interpretation of the medical evidence, the ALJ's interpretation is reasonable and should be affirmed. *See Burch v. Barnhart,* 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

Accordingly, improvement with treatment was a clear and convincing reason, supported by substantial evidence for the ALJ to discount Plaintiff's testimony.

### 2. *Intact Memory and Cooperative and Interactive Behavior*

The ALJ also discounted Plaintiff's testimony because Plaintiff was cooperative and interactive with treatment providers and examiners, and showed intact remote, recent, and immediate memory. AR at 20-21. Similar to the reasons this behavior is not a specific and legitimate reason to discount Dr. Widlan's medical opinion, it is also not a clear and convincing reason to discount Plaintiff's testimony. First, Plaintiff is not alleging memory impairments. Second, his ability to interact with treatment providers and examiners on a one-on-one basis in a medical or examination environment is not inconsistent with his alleged impairment regarding the public and crowds, or symptoms of getting overwhelmed, angry, and experiencing anxiety

attacks. Accordingly, Plaintiff's intact memory and cooperative and interactive behavior is not a clear and convincing reason, supported by substantial evidence, to discount Plaintiff's testimony.

          3.      *Activities of Daily Living*

Lastly, the ALJ discounted Plaintiff's testimony because the ALJ found his activities of daily living inconsistent with his claims of debilitating social anxiety. The ALJ found Plaintiff's reports of selling beadwork, going to sweat lodges and pow wows, and volunteering in a kitchen three days a week were not consistent with his alleged severe symptoms. AR at 21. The ALJ also found Plaintiff admitted he was capable of shopping, paying bills, and using public transportation. *Id.* at 22.

Plaintiff argues that his participation in pow wows and sweat lodges were part of his spirituality and are not "social activities." (Dkt. # 11 at 10.) Regardless of whether Plaintiff's motivation for participating in these activities was spiritual, the ALJ could reasonably find that participation in these events involved social interaction, and could contradict the severity of Plaintiff's alleged functional limitations, specifically his avoidance of people and the public.

However, the single record cited to by the ALJ merely contains one quote from Plaintiff which states he sells beadwork and goes to a sweat lodge or "pow pow." AR at 287. The record does not contain any information regarding the frequency of these activities, or the duration of Plaintiff's participation. Given the vagueness of this statement and the lack of details, Plaintiff's participation in pow wows and sweat lodges is not a clear and convincing reason, supported by substantial evidence, to discount his testimony.

With regard to Plaintiff's volunteer activities, the record shows that on October 14, 2015, he reported that he was volunteering in a kitchen for five hours a day, three days a week, however, Plaintiff reported on November 6, 2015 that he had not volunteered in over a week

because of a conflict with another individual at the volunteer site. *Id.* at 305, 306. Treatment records show that after reporting this conflict, Plaintiff's counselor advised him "not to be violent if he feels like someone is bothering him." *Id*. It is unclear from the record if Plaintiff began volunteering again after this, and if so, how frequently. Without more, evidence that he volunteered for approximately two weeks before stopping due to a personnel conflict is not a clear and convincing reason, supported by substantial evidence, to discount Plaintiff's testimony.

Plaintiff also argues that his basic daily activities such as shopping, paying bills, and using public transportation are not comparable to the level of activity required for substantial gainful activity. (Dkt. # 11 at 13.) However, the ALJ did not cite to these activities to establish that Plaintiff can work. Rather, the ALJ cited to these activities to show his impairments are not as severe as he alleges. *See Orn,* 495 F.3d at 639 (the two grounds for using daily activities to form the basis of an adverse credibility determination: (1) whether or not they contradict the claimant's other testimony and (2) whether or not the activities of daily living meet "the threshold for transferable work skills."). Although these activities could contradict Plaintiff's testimony regarding the severity of his impairments, the ALJ failed to identify any details about these activities, such as how frequently and competently he did them. As noted by Plaintiff, he only went shopping twice a month and his savings account was overdrawn. (Dkt. # 11 at 12 (citing AR at 210, 257).) Although the record shows Plaintiff did use public transportation, this activity alone is not a clear and convincing reason, supported by substantial evidence, to discount Plaintiff's testimony, and the record indicates he struggled with this activity. AR at 283 (reporting that Plaintiff struggles with public transportation).

Although Plaintiff's intact memory, cooperative and interactive behavior with treatment providers and examiners, and activities of daily living were not clear and convincing reasons to

discount his testimony, improvement with medication was a clear and convincing reason, supported by substantial evidence. Accordingly, the ALJ did not err in discounting Plaintiff's testimony. *See Carmickle v. Comm'r of Social Sec. Admin.*, 533 F.3d at 1155, 1162-63 (9th Cir. 2008). As discussed above, this matter is being remanded for further administrative proceedings. On remand, the ALJ should not rely on Plaintiff's intact memory, cooperative and interactive behavior with treatment providers and examiners, or activities of daily living to discount Plaintiff's testimony, should such a finding be warranted, without further developing the record.

## C. Residual Functional Capacity

The ALJ's re-evaluation of the medical opinion evidence, and any new evidence concerning Plaintiff's mental health impairments, may impact Plaintiff's RFC and the review of potential jobs Plaintiff may be capable of performing, as part of the analysis at step five. *See Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009) ("an RFC that fails to take into account a claimant's limitations is defective"). As the ALJ must reassess Plaintiff's RFC on remand, the ALJ is directed to re-evaluate step five to determine whether there are jobs existing in significant numbers in the national economy Plaintiff can perform given the RFC.

## V. CONCLUSION

For the foregoing reasons, the Commissioner's final decision is REVERSED and this case is REMANDED for further administrative proceedings under sentence four of 42 U.S.C. § 405(g). On remand, the ALJ should re-evaluate the medical opinion evidence of Drs. Widlan and Dr. Burdge, and re-evaluate step five if necessary.

Dated this 5th day of November, 2019.

MICHELLE L. PETERSON
United States Magistrate Judge